UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DAVID C. LUBERACKI, Plaintiff : CIVIL NO. 3:CV-05-1219

-vs- : (Judge Kosik)

JOANNE B. BARNHART, Commissioner of Social Security, Defendant :

# MEMORANDUM

Before the court is a dispute concerning a decision by the Commissioner of Social Security in which the Commissioner denied the plaintiff's claims for supplemental security income (SSI) and disability insurance benefits (DIB). The record is being reviewed pursuant to 42 U.S.C. § 405(g) to determine whether there is substantial evidence to support the Commissioner's decision. The matter was assigned to United States Magistrate Judge J. Andrew Smyser and appropriate briefs were filed. In a Report and Recommendation filed February 16, 2006, the Magistrate Judge found that the Commissioner's decision was supported by substantial evidence and recommended that the plaintiff's appeal be denied. The plaintiff filed objections to the Magistrate Judge's Report and Recommendation. The defendant filed a brief in response. For the reasons that follow, we will adopt the Report and Recommendation of the Magistrate Judge and affirm the findings of the Commissioner.

## I. BACKGROUND

The plaintiff, David Luberacki ("Plaintiff") suffered a left shoulder injury in a motor vehicle accident on May 20, 1997. As a result of the injury, Plaintiff claims that he was unable to return to work as a truck driver until August of that year. His injury caused him to permanently cease working on February 24, 1998. Prior to his accident, Plaintiff had worked as a truck driver, truck loader, equipment supervisor, aluminum plant worker, hotel maintenance worker, and photo finisher.

Plaintiff underwent his first surgery, left shoulder acromioplasty and bursectomy, on March 4, 1998. On February 11, 1999, Plaintiff underwent a second shoulder surgery to correct contracture of the left shoulder and bicipital tendinitis, as well as a painful scar. The second surgery was performed by Michael J. Sicuranza, M.D. Dr. Sicuranza performed a final surgery on April 20, 1999, to correct multidirectional instability of the left shoulder with left anterior inferior subluxation. On July 28, 1999, Dr. Sicuranza reported that Plaintiff would reach maximum medical improvement within another three months and that he would experience permanent restrictions, including no lifting over fifty pounds and no use of the left arm overhead in a strenuous, repetitive fashion. (Tr. 443).

Plaintiff did not treat with any physicians for over two years after his follow-up visit with Dr. Sicuranza on July 28, 1999. However, on January 18, 2000, Plaintiff was seen by an orthopedic surgeon, Balint Balog, M.D., for an independent medical exam (IME) arranged by the defendant in Plaintiff's personal injury action arising from the May 20, 1997, car accident. Among other findings, Dr. Balog opined that Plaintiff was unable to frequently lift more than ten pounds, should avoid overhead lifting, and was restricted from driving a tractor trailer. (Tr. 447-50). Dr. Balog also concluded that Plaintiff could sit, stand,

or walk for eight hours within an eight hour workday. (Tr. 449).

Dr. Sicuranza completed a medical source statement in July of 2000. Dr. Sicuranza noted that he had last seen Plaintiff on May 12, 1999.[1] In the statement, Dr. Sicuranza concluded that Plaintiff could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds. (Tr. 462). He opined that Plaintiff could stand, walk or sit for eight hours in an eight hour workday, and that Plaintiff could drive a motor vehicle occasionally. (Tr. 462-63). Dr. Sicuranza asserted that Plaintiff was unable to work. (Tr. 463).

Raymond J. Kraynak, D.O., examined Plaintiff at the request of the Commissioner on February 5, 2001. On presentation to Dr. Kraynak, Plaintiff denied stiffness, but displayed decreased range of motion in his left shoulder, as well as a decreased grip strength of the left hand. (Tr. 477-78). The evaluation evidenced no other deficiencies in range of motion. (Tr. 478).

Plaintiff presented for medical treatment for the first time in over two years on October 24, 2001. (Tr. 523). On presenting to Dr. Sicuranza, Plaintiff displayed pain and decreased range of motion in the left shoulder and complained of new pain in his right shoulder. X-rays of Plaintiff's left shoulder revealed minimal post-operative changes and a well-maintained humeral acromial space with no arthritis. (Tr. 523). X-rays of the right shoulder evidenced no objective signs of injury or arthritis. (Tr. 523). Dr. Sicuranza

---

[1] The last date that Dr. Sicuranza treated Plaintiff prior to completing the medical source statement is unclear. The statement notes the date May 12, 1999. As noted above, however, Dr. Sicuranza drafted a letter on July 28, 1999, that suggests he treated Plaintiff on or about that date. The parties agree that Plaintiff did not see Dr. Sicuranza from July 28, 1999, through October 24, 2001.

diagnosed Plaintiff with left shoulder instability, contracture - left shoulder, right shoulder pain, and bilateral carpal tunnel syndrome. (Tr. 523-24). There is no discussion of any objective tests or subjective analysis regarding the carpal tunnel diagnosis. Dr. Sicuranza concluded that Plaintiff had reached maximal medical improvement, but provided no opinion as to Plaintiff's ability to return to work.

Plaintiff filed an application for DIB on January 28, 1999, alleging disability since February 24, 1998, due to left shoulder impingement syndrome and mood disorder. His claim was initially denied. Plaintiff presented for a hearing before an Administrative Law Judge (ALJ). The ALJ denied his claim in an October 4, 2000, opinion. Plaintiff then filed an appeal to the Appeals Council on December 4, 2000. On December 7, 2000, Plaintiff filed a second application asserting claims for DIB and SSI. Plaintiff filed a request for a hearing before an ALJ after his second claim was denied. In the meantime, on September 7, 2001, the Appeals Council vacated the ALJ's decision on Plaintiff's first claim, remanded the matter to the ALJ, and consolidated it with the second claim. The second claim for DIB was administratively dismissed. Plaintiff presented to a hearing before ALJ Edward Morriss on September 5, 2002, to present his January 28, 1999, claim for DIB, and his December 7, 2000, claim for SSI.

Stanley R. Askin, M.D., reviewed Plaintiff's medical records and testified as an expert in orthopedic surgery at Plaintiff's 2002 hearing before the ALJ. Dr. Askin criticized the diagnosis of left shoulder instability. He noted that the diagnosis was not supported by objective evidence, such as being able to pull the humerous out of the shoulder socket or a feeling as though the arm "goes dead." (Tr. 40-1). The doctor questioned whether the three surgeries where even necessary given Plaintiff's age and the nature of the accident.

(Tr. 46). Moreover, he proposed that the lack of objective findings could evidence that Plaintiff's subjective complaint of pain had, "some psychological aspect to it . . .." (Tr. 46). Dr. Askin suggested that the only disability Plaintiff suffered was a result of the surgeries themselves. (Tr. 44). He testified that Plaintiff's injury met or equaled a listed impairment under Section 1.08 of Appendix 1, Subpart P, Regulation No. 4 (hereinafter "section 1.08 listing"), for the period of time between the first and third surgeries. (Tr. 52, 56).

The ALJ filed a partially favorable decision on October 7, 2002. The ALJ determined that Plaintiff's impairments equaled a section 1.08 listing for the period of time beginning on February 24, 1998, the date Plaintiff first consulted a surgeon, through July 28, 1999, the date of Dr. Sicuranza's post surgery report, roughly three months after the final surgery. The ALJ concluded that since July 28, 1999, Plaintiff retained the residual functional capacity (RFC) to perform light work activity with limitations regarding the use of his left arm. He determined that Plaintiff could still perform his past relevant work (PRW) as a photo finisher.

On April 21, 2005, the Appeals Council rejected Plaintiff's appeal of the October 7, 2002, decision. (Tr. 6). Plaintiff subsequently filed the present action and the matter was assigned to Magistrate Judge J. Andrew Smyser. On February 16, 2006, Magistrate Judge Smyser issued a Report and Recommendation wherein he suggested that the October 7, 2002, decision granting Plaintiff's claim for SSI for only a closed period of time was based upon substantial evidence. Plaintiff objected to the Report and Recommendation and the defendant filed a brief in response. Plaintiff's Objections include two numbered challenges to the Report and Recommendation: (1) the Magistrate Judge wrongly held that Plaintiff's shoulder impairment had improved and that Plaintiff was no longer disabled, and, (2) the

Magistrate Judge wrongly held that Plaintiff no longer met or equaled a section 1.08 listed impairment.[2]

## II. DISCUSSION

### A. Standard of Review

When objections are filed to a Report and Recommendation of a Magistrate Judge, we must make a *de novo* determination of those portions of the Report to which objections are made. 28 U.S.C. §636(b)(1)(C); *see Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In doing so, we may accept, reject or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); Local Rule 72.3. Although our review is *de novo*, we are permitted by statute to rely upon the Magistrate Judge's proposed recommendations to the extent we, in the exercise of sound discretion, deem proper. *United States v. Raddatz*, 447 U.S. 667, 676 (1980).

When a claimant appeals from a final decision by the Commissioner of the Social Security Administration, the district court should uphold the Commissioner's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999); *Stunkard v. Secretary of Health and Human Serv.*, 841 F.2d 57, 59 (3d Cir. 1988). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Plummer*, 186 F.3d at 427. It is less than a preponderance of the evidence but more than a mere scintilla. *Id.*

---

[2] Plaintiff's appeal to the Magistrate Judge and subsequent objections to the Report and Recommendation do not challenge the ALJ's determination that Plaintiff's alleged mental impairments do not prevent Plaintiff from returning to his past relevant work. Accordingly, we will not address the mental component of Plaintiff's claim in this memorandum.

**B. Social Security Evaluation Process**

A five-step evaluation process is used to determine whether a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. If it is found that a claimant is disabled or not disabled at any point in the sequence, review does not proceed any further beyond that step in the sequence. 20 C.F.R. § 404.1520. The first step of the process requires a claimant to establish that he has not engaged in "substantial gainful activity." *See* 20 C.F.R. § 404-1520. The second step involves a determination of whether the claimant has a severe impairment. At the third step, the Commissioner evaluates whether the claimant's impairments or combination of impairments meet or equal those listed in Appendix 1, Subpart P, Regulation No. 4.

If it is determined that the claimant's impairments do not meet or equal a listed impairment, the Commissioner must continue on to the fourth step in the sequential evaluation process and consider whether the claimant has the RFC to perform PRW. If the claimant establishes that he is unable to perform PRW, then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the claimant is able to perform, consistent with his medically determinable impairments, functional limitations, age, education and work experience. *See* 20 C.F.R. § 404.1520(a). This is the final step in the evaluation of a claimant's disability.

**C. ALJ's Findings**

In applying the evaluation process to the facts of this case, the ALJ found that: (1) Plaintiff did not engage in substantial gainful activity since the alleged onset of disability;[3]

---

[3] Tr. 24; Finding 2.

(2) Plaintiff's impairments are severe within the meaning of the Regulations;[4] (3) Plaintiff's allegations regarding symptoms and limitations were not entirely credible;[5] (4) from February 24, 1998, through July 28, 1999, Plaintiff's impairments were of sufficient severity to meet or medically equal an impairment listed in Appendix 1, Subpart P, Regulation No. 4;[6] (5) during the above period, Plaintiff was under a "disability" as defined in the Social Security Act;[7] (6) since July 28, 1999, Plaintiff has experienced medical improvement directly related to the ability to perform work activity;[8] (7) Plaintiff has the RFC to perform light work, but is unable to use his left upper extremity repetitively, is unable to perform overhead reaching with the left upper extremity, has mild to moderate limitations in concentration and attention due to pain, and has mild to moderate difficulty responding to the usual demands in a work setting;[9] (8) since July 28, 1999, Plaintiff's RFC has not precluded the performance of PRW;[10] and, (9) since July 28, 1999, Plaintiff has not been under a "disability" as defined in the Social Security Act.[11]

In reaching his determination, the ALJ gave significant weight to the consulting expert, Dr. Askin. (Tr. 20). He found Dr. Askin's opinion that Plaintiff's surgeries were

---

4 Tr. 24; Finding 3.

5 Tr. 24; Finding 4.

6 Tr. 24; Finding 5.

7 Tr. 24; Finding 6.

8 Tr. 24; Finding 7.

9 Tr. 24; Finding 8.

10 Tr. 24; Finding 9.

11 Tr. 24; Finding 10.

performed secondary to pain complaints to be well based and consistent with the surgical reports. *Id.* The ALJ then listed several examples from the Plaintiff's medical records that supported the opinion that Plaintiff's subjective complaints of pain were not consistent with objective evidence of injury or inadequate functioning. *Id.* Moreover, the ALJ noted that Plaintiff had no ongoing treatment for pain or functioning for two years following his final surgery, and that Plaintiff was not taking any pain medication. *Id.* The ALJ gave only limited weight to the treating physician, Dr. Sicurzana's July 2000 opinion of disability, as the ALJ found that opinion inconsistent with the doctor's earlier July 1999 report concluding that Plaintiff would only be prevented from heavy lifting. *Id.* The ALJ additionally found that Plaintiff's own testimony did not reveal major dysfunction of the extremity outside of some difficulty with overhead reaching to wash his hair and with putting on a belt. *Id.*

Citing Dr. Askin's testimony, the ALJ determined that Plaintiff's condition was sufficiently serious to meet or equal the requirements of a section 1.08 listed impairment from February 24, 1998, through July 28, 1999. (Tr. 21). He found Plaintiff disabled within the meaning of the Social Security Act during that time. In addition to providing a comprehensive analysis of why Plaintiff no longer meets the requirements of a section 1.08 listed impairment, the ALJ also included an explanation of the basis for his conclusion that Plaintiff's condition improved after the period of disability;

> However, since July 28, 1999, the claimant has experienced a decrease in the medical severity of the impairments as shown by changes (improvement) in symptoms, signs or laboratory findings. There has been mild improvement noted in the claimant's physical examinations since that time, although he continues to have some deficits secondary to subjective pain and guarding. There is no evidence of atrophy to establish prolonged nonuse of the extremity suggestive of major

> dysfunction. Further, October 2001 x-rays showed only minimal postoperative changes and no arthritis and that no further treatment was recommended. Accordingly, the claimant has experienced medical improvement within the meaning of 20 C.F.R. 404.1594 and 416.994.

*Id.*

**D. Analysis Of Plaintiff's Objections**

Plaintiff challenges the Report and Recommendation on two grounds. In his first objection, Plaintiff argues that the Magistrate Judge erred in holding that Plaintiff's shoulder impairment improved subsequent to the closed period of disability. He further complains that the Magistrate Judge wrongly held that Plaintiff did not meet the requirements of a section 1.08 listed impairment. Plaintiff is in error.

**1. Plaintiff's Condition Improved**

Plaintiff notes that the ALJ found him to be disabled for a period of time from February 24, 1998, through July 28, 1999. Plaintiff contends that when an ALJ determines that a claimant is entitled to a closed period of disability, the ALJ must find evidence demonstrating that the claimant has experienced medical improvement since the end of the designated period. He attests that the burden is upon the Commissioner to provide evidence of medical improvement. Plaintiff argues that the medical records after July 28, 1999, fail to demonstrate any improvement in Plaintiff's condition. He concludes that the Magistrate Judge erred in holding that the ALJ's determination on the issue of improvement was supported by substantial evidence.

Magistrate Judge Smyser correctly noted that when a social security claimant is awarded a closed period of disability, the Commissioner must find that the claimant has

experienced medical improvement. This approach was first employed in social security termination proceedings, but was extended to cases involving closed periods of disability by the Third Circuit in the case of *Chrupcala v. Heckler*, 829 F.2d 1269 (3d Cir. 1987). In *Chrupcala*, the Third Circuit held, "when the Secretary seeks to terminate a disability recipient's benefits, once the recipient has introduced evidence that his condition remains essentially the same as it was at the time of the earlier determination, the burden shifts to the Secretary to present evidence of sufficient improvement in the claimant's condition to enable him to undertake gainful activity." *Chrupcala*, 829 F.2d at 1274 (citing *Kuzmin v. Schweiker*, 714 F.2d 1233, 37 (3d Cir. 1983)). "The claimant's introduction of evidence that his condition continues gives rise to a presumption of continuing disability." *Id.* at 1274 n.7.

In the instant case, the ALJ relied heavily upon the testimony of the consulting expert, Dr. Askin. Dr. Askin opined at the hearing that Plaintiff's only disability stemmed from the three surgeries he sustained in an attempt to treat his left shoulder pain. (Tr. 44). He testified that Plaintiff's injury met or equaled a section 1.08 listed impairment, for the period of time between the first consultation and the third surgery. (Tr. 52, 56). After analyzing the medical evidence and determining that Plaintiff does not currently meet a section 1.08 listed impairment, the ALJ devoted a full paragraph detailing Plaintiff's medical improvement since the end of the disability period. (Tr. 21). The ALJ noted that objective tests performed subsequent to that period of disability showed no evidence of atrophy due to inactivity and no significant post operative changes. Plaintiff did not seek treatment for his pain or limitations for over two years and, as of the date of the hearing, Plaintiff was not

taking any medication to control the pain.

Plaintiff's objections to the Report and Recommendation cite to the results of various mobility tests in an attempt to demonstrate that Plaintiff's impairment has not improved. Plaintiff's arguments, however, are misplaced. The ALJ found Plaintiff met the requirements of a 1.08 listed impairment because of the surgeries themselves. Plaintiff's recovery from the surgeries was the medical improvement required by *Chrupcala*. But for the surgeries and the limitations experienced during recuperation, Plaintiff would not have been found to meet or equal a listed impairment. Contrary to the reasoning applied by Plaintiff in his objections, the cited limitations in movement and use of the left arm resulting from subjective complaints of pain were not the basis for the ALJ's findings for a period of disability. We will not now hold that Plaintiff's continued pain and limitations require a finding of disability when the same subjective complaints and complications did not serve as the basis for the ALJ's determination of disability during the period encompassing Plaintiff's surgeries. We do not read *Chrupcala* to compel such an illogical result. Magistrate Judge Smyser did not err in holding that substantial evidence supports the ALJ's determination that Plaintiff's condition improved since the closed period of disability.

**2. Plaintiff's Condition Does Not Meet Or Equal A Listed Impairment**

Plaintiff argues that his condition meets or equals a section 1.08 listed impairment because he has a, "[s]oft tissue injury (e.g., burns) of an upper or lower extremity, trunk, or face and head, under continuing surgical management, as defined in 1.00M, directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset." 20 C.F.R. Part 404, Subpt.

P, App. 1, § 1.08.[12] Plaintiff reiterates his first objection, that pursuant to section 1.08 the only way a claimant can cease to meet the requirements of a listed impairment is if "major function" has been restored. He argues that the Magistrate Judge erred in evaluating Plaintiff's present status under the requirements of a section 1.02 listed impairment. That section governs situations where a claimant suffers from a major dysfunction but does not undergo surgery. Plaintiff concludes that section 1.02 does not apply and that he has not experienced any restoration of major function sufficient to terminate his status as meeting the requirements of a section 1.08 listed impairment.

We need not address Plaintiff's assertion regarding the applicability of sections 1.02 and 1.08. Rather, accepting Plaintiff's argument about which section applies in this instance, we nonetheless find that the ALJ's decision is supported by substantial evidence. If we accept that section 1.08 applies, we are left with the same analysis that we applied to Plaintiff's first objection: has Plaintiff's condition improved? As noted above, the ALJ gave significant weight to the consulting expert, Dr. Askin. (Tr. 20). He found Dr. Askin's opinion that Plaintiff's surgeries were performed secondary to pain complaints to be well

---

12 Section 1.00M defines continuing surgical management as follows:

> Under continuing surgical management, as used in 1.07 and 1.08, refers to surgical procedures and any other associated treatments related to the efforts directed toward the salvage or restoration of functional use of the affected part. It may include such factors as post-surgical procedures, surgical complications, infections, or other medical complications, related illnesses, or related treatments that delay the individual's attainment of maximum benefit from therapy. When burns are not under continuing surgical management, see 8.00F.

based and consistent with the surgical reports. *Id.* The ALJ gave only limited weight to the treating physician, Dr. Sicurzana's July 2000, opinion of disability. *Id.* Based upon the objective medical evidence, Plaintiff's own testimony, and the opinion of Dr. Askin, the ALJ determined that the condition that met or equaled a section 1.08 listed impairment resulted only from the three surgeries themselves. Plaintiff's recovery from those surgeries was the medical improvement sufficient to fix a closed period of disability under *Chrupcala*. Plaintiff's consistent, subjective complaints of pain were not, and are not, the basis for a finding of disability. As we determined in our analysis of Plaintiff's first objection, the ALJ's decision on the closed period of disability is consistent with Third Circuit precedent and supported by substantial evidence. Plaintiff's objection to the Magistrate Judge's Report and Recommendation upholding the ALJ's determination that Plaintiff no longer meets the requirements of a section 1.08 listed impairment is without merit.

## III. CONCLUSION

We agree with Magistrate Judge Smyser's conclusion that the decision of the Commissioner is supported by substantial evidence. Plaintiff's objections to the Report and Recommendation are without merit. The ALJ's determination that Plaintiff no longer meets or equals a section 1.08 listed impairment will not be disturbed. Because we find no merit to Plaintiff's objections, we will adopt the recommendation of the Magistrate Judge that Plaintiff's appeal be denied. An appropriate order is attached.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID C. LUBERACKI, Plaintiff | : | |
| -vs- | : | CIVIL NO. 3:CV-05-1219 |
| | : | (Judge Kosik) |
| JOANNE B. BARNHART, Commissioner of Social Security, Defendant | : | |

**ORDER**

AND NOW, this 12th day of May, 2006, IT IS HEREBY ORDERED THAT:

(1) The Report and Recommendation of Magistrate Judge J. Andrew Smyser (Doc. 12) dated February 16, 2006, is **ADOPTED**;

(2) the plaintiff's appeal is **DENIED**;

(3) the decision of the Commissioner is **AFFIRMED**; and,

(4) the Clerk of Court is directed to **CLOSE** this case and to forward a copy of this Memorandum and Order to the Magistrate Judge.

s/Edwin M. Kosik
United States District Judge